OPINION *Page 2 
{¶ 1} Defendant-Appellant, Marco J. Cooper, appeals the judgment of the Marion County Court of Common Pleas, convicting him of one count of possession of cocaine, one count of tampering with evidence, and one count of possession of heroin. On appeal, Cooper argues that there is insufficient evidence to support his convictions for possession of cocaine and possession of heroin; that his convictions for possession of cocaine and possession of heroin are against the manifest weight of the evidence; and, that he was denied effective assistance of counsel. Finding that the State failed to provide sufficient evidence to support Cooper's possession of cocaine and heroin convictions, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} In March 2006, the Marion County Grand Jury indicted Cooper on one count of possession of cocaine in violation of R.C.2925.11(A),(C)(4), a felony of the third degree; one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree; and, one count of possession of heroin in violation of R.C.2925.11(A),(C)(6), a felony of the third degree. Cooper entered a plea of not guilty to all three counts.
 {¶ 3} In June 2006, a jury trial was held, during which the following testimony was presented. *Page 3 
 {¶ 4} Lieutenant B.J. Gruber, who is in charge of the Investigative Unit for the Detective Bureau of the Marion City Police Department, testified that on March 6, 2006, he assisted with a traffic stop commenced by Officer Cory Winfield; that Officer Winfield approached the driver's side of the vehicle and he approached the passenger side; that he made original contact with Quinton Miller, who was sitting in the rear passenger seat of the vehicle; that Leonard McGraw was driving the vehicle and Cooper was in the front passenger seat of the vehicle; that he did not search the vehicle, but Detective Isom and Officer Winfield did and found cocaine located in the rear passenger seat pocket; that after Cooper was taken out of the vehicle, he saw him throw something over his shoulder, which Cooper indicated was "weed" (tr. p. 99); and, that Detective Chase found a baggie, which contained marijuana and was what Cooper had thrown.
 {¶ 5} On cross-examination, Lieutenant Gruber indicated that the vehicle was located at a house known for drug transactions prior to being pulled over and that the vehicle was pulled over because of a turn signal violation.
 {¶ 6} Detective Steve Chase with the Marion City Police Department's MARMET Drug Task Force testified that on March 6, 2006, he was working on light duty, because of his recent knee reconstruction surgery; that on that day, he went to observe a drug house with Detective Isom; that at the drug house, he noticed a white Chevy Impala, which is "owned by Mr. Altivator who generally *Page 4 
loans his vehicle out to drug dealers to perform drug transactions" (tr. p. 114); that he saw a couple of people get out of the vehicle, enter the drug house, and return to the vehicle, then one of them went back into the house and returned to the vehicle, and then the vehicle left the house; that the vehicle was at the drug house for approximately 10 minutes; that he could not tell who got into and out of the vehicle; that Officer Winfield pulled over the vehicle after it failed to use its turn signal; that once the vehicle was pulled over, he and Detective Isom went to a nearby parking lot to view the incident; and, that he saw Cooper remove something from his back pants pocket and throw it over some hedges. Detective Chase continued that when Cooper reached into his back pocket, he thought Cooper was going for a gun; that once he saw this, he got out of the unmarked police vehicle he was in and alerted the police officers; and, that Cooper had been handcuffed before he went to locate what Cooper had thrown and found some marijuana that was in transparent paper. Detective Chase also testified that it was very common to have more than one person involved in a drug transaction, because having more than one person does not force a hand to hand transaction.
 {¶ 7} On cross-examination, Detective Chase indicated that people may be located near a drug transaction and have no role in it; that there were no weapons found in the vehicle; that McGraw has been known to his unit for some time, because of McGraw's involvement in drugs; that the vehicle has been involved in *Page 5 
drug transactions; that prior to March 6, 2006, he did not know of Cooper; that he did not see Cooper get out of the vehicle; and, that prior to Cooper being taken out of the vehicle, he noticed Cooper say something to Miller, who was in the back seat of the vehicle.
 {¶ 8} Detective Andrew Isom, who works on the Narcotics Division of the Marion City Police Department, testified that on March 6, 2006, he was checking out a drug house in Marion, Ohio; that when, he drove by this house, he noticed a vehicle, also the subject of several drug complaints, pull into the driveway of the house and park; that he drove down the street and parked his unmarked police vehicle so that he could observe the vehicle; that the vehicle was there between five to ten minutes, which is about the right length of time to perform a drug transaction; that prior to the vehicle leaving, he had notified other officers of the situation; and, that Officer Winfield pulled over the vehicle after the driver had failed to properly use its turn signal. Detective Isom continued that Officer Winfield approached the vehicle; that he parked his vehicle in a church parking lot and approached the stopped vehicle; that he asked Cooper to exit the vehicle, performed a quick weapons pat down, and did not find any weapons on his person; and, that he then asked Miller to exit the vehicle.
 {¶ 9} Detective Isom then testified that, after obtaining permission from McGraw to search the vehicle, he found what he believed to be a bag of cocaine in *Page 6 
the back pocket of the front passenger seat; that about an inch and a half of the bag was sticking out of the pocket; that in the bag, there was also an amount of heroin; that Officer Winfield found approximately $900.00 on McGraw's person, and Miller had a bottle of Inositol dietary powder, which is used as a cocaine cutting agent, on him; that Cooper was approximately 6 feet and one inch tall and weighs 220 pounds; and, that Cooper was sitting within a couple of inches from the cocaine and heroin located in the back pocket of the front passenger seat.
 {¶ 10} Detective Isom also indicated that he went to see Cooper while he was in jail; that Cooper signed a Miranda form, which advised him of his rights, and a waiver of his rights; that he taped a conversation that he had with Cooper and it was played to the court; and, that during the conversation, Cooper made a few admissions, including that he knew that McGraw and Miller brought drugs into the vehicle, that McGraw and Miller came to pick him up and take him to Marion to see a woman named April, that he knew that McGraw was a drug dealer, that he knew McGraw and Miller were doing a drug deal at the residence being observed, but Cooper was not a part of the transaction, that he knew that drugs were located in the vehicle, but did not know specifically where the drugs were located inside the vehicle or who had them, that Cooper did throw the marijuana, and that Cooper had used cocaine in Columbus, Ohio, the weekend prior to the incident. *Page 7 
 {¶ 11} On cross-examination, Detective Isom indicated that he did not find any drug paraphernalia on Cooper's person; that he did not see Cooper make a throwing motion; that Cooper did not appear to know who had the drugs; that Cooper consistently discussed that he came to Marion to see a woman named April; that Cooper wanted to get to where he was going, so that he could eat some food and smoke his marijuana; and, that Cooper stated that he never got out of the vehicle.
 {¶ 12} On redirect examination, Detective Isom provided that people come from out of town to sell drugs in Marion; that he planned on arresting all of the passengers in the vehicle and charge them with possession and trafficking in cocaine and heroin; and, that Cooper indicated to him that he had knowledge of drugs in the vehicle, but gave conflicting information about who possessed the drugs.
 {¶ 13} Officer Cory Winfield, a patrolman with the Marion City Police Department, testified that on March 6, 2006, he was called out to assist detectives from MARMET in stopping a known drug vehicle; that he was able to stop the vehicle, because the driver of the vehicle did not use his turn signal when he made a left turn; that McGraw was driving the vehicle and gave permission to search the vehicle; and, that other than the drugs found in the back pouch of the passenger's side front seat, no other drugs were found in the vehicle. *Page 8 
 {¶ 14} Officer Rick Winfield, a patrolman with the Marion Police Department, testified that on March 6, 2006, he drove Cooper to the jail and that, on his way to the jail, Cooper indicated that he did not have any drugs on him and that the drugs that were found were not his.
 {¶ 15} Todd Wharton, a forensic scientist of the Ohio Bureau of Criminal Identification and Investigation (hereinafter referred to as "BCI"), testified that he did not find any latent fingerprints on the bag found in the back pocket of the vehicle's front passenger seat.
 {¶ 16} Major Bill Collins with the Marion City Police Department testified that he took the substances that were found in the back pocket of the passenger's side front seat to BCI in Mansfield, Ohio; that Tony Tombasco, a forensic scientist at BCI, performed the drug testing; and, reviewing Tombasco's reports, that Tombasco identified the substances as 6.94 grams of heroin, a schedule one controlled substance, and 40.25 grams of cocaine, a schedule two controlled substance.
 {¶ 17} Major Randy Caryer with the Marion City Police Department testified that he tested the substance that Cooper threw and that the substance was 2.3 grams of marijuana. *Page 9 
 {¶ 18} After Major Caryer testified, the State rested, Cooper's counsel failed to move under Crim.R. 29 for judgment of acquittal, and Cooper did not present any evidence.
 {¶ 19} The jury found Cooper guilty of one count of possession of cocaine in violation of R.C. 2925.11(A),(C)(4), a felony of the third degree; one count of tampering with evidence in violation of R.C.2921.12(A)(1), a felony of the third degree; and, one count of possession of heroin in violation of R.C. 2925.11(A),(C)(6), a felony of the third degree. Additionally, the jury found that the amount of cocaine involved in the offense exceeded 25 grams and that the amount of heroin involved exceeded 5 grams. Subsequently, Cooper was sentenced to a mandatory prison term of three years for the possession of cocaine charge, one year for the tampering with evidence charge, and three years for the possession of heroin charge, to be served concurrently for a total sentence of three years.
 {¶ 20} It is from this judgment Cooper appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT DEFEND ANT-APPELLANT'S CONVICTION FOR POSSESSION OF COCAINE AND HEROIN. *Page 10 
 Assignment of Error No. II DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF COCAINE AND HEROIN IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. III DEFENDANT-APPELLANT RECEIVED PREJUDICIALLY INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AS WELL AS HIS RIGHTS UNDER SECTION 10, ARTICLE I, OHIO CONSTITUTION.
 Assignment of Error No. I {¶ 21} In his first assignment of error, Cooper argues that there was insufficient evidence to support his convictions of possession of cocaine and possession of heroin.[1] Specifically, Cooper alleges that the record does not provide sufficient evidence to support his required mens rea and his constructive possession of the cocaine and heroin located in the back pocket of the passenger seat.
 {¶ 22} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe (2005), 105 Ohio St.3d 384, 392, citing State v.Jenks (1981), 61 Ohio St.3d 259. Sufficiency is a *Page 11 
test of adequacy, State v. Thompkins (1997), 78 Ohio St.3d 380, 386, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955), 162 Ohio St. 486.
 {¶ 23} We initially note that Cooper failed to move for a Crim.R. 29(A) judgment of acquittal. Failing to move for a judgment of acquittal pursuant to Crim.R. 29(A), Cooper waived all but plain error regarding the sufficiency of the evidence. See Crim.R. 29(A); State v. Roe (1989),41 Ohio St.3d 18, 25; State v. Moreland (1990), 50 Ohio St.3d 58, 62;Cleveland v. Ellsworth, 8th Dist. No. 83040, 2004-Ohio-4092, ¶ 7. In order to have plain error under Crim.R. 52(B) there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.
 {¶ 24} R.C. 2925.11(A) provides "[n]o person shall knowingly obtain, possess, or use a controlled substance." Further, R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. *Page 12 
A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 25} R.C. 2925.01(K) provides "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession of drugs can be either actual or constructive. See State v.Wolery (1976), 46 Ohio St.2d 316, 329, certiorari denied (1976), 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed.2d 301; State v. Haynes (1971),25 Ohio St.2d 264. "A person has `actual possession' of an item if the item is within his immediate physical possession." State v. Williams, 4th Dist. No. 03CA2736, 2004-Ohio-1130, ¶ 23 citing State v. Fugate (Oct. 2, 1998), 4th Dist. No. 97CA2546. A person has "constructive possession" if he is able to exercise domination and control over an item, even if the individual does not have immediate physical possession of it. State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus; Wolery, supra. For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." Hankerson,70 Ohio St.2d at 91. Finally, the State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence. Jenks, 61 Ohio St.3d at 272-73, superseded by constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355. Moreover, two or *Page 13 
more persons may have joint constructive possession of a particular item. State v. Mann (1993), 93 Ohio App.3d 301, 308; State v. Riggs
(Sept. 13, 1999), 4th Dist. No. 98CA39.
 {¶ 26} A defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession. State v.Cola (1991), 77 Ohio App.3d 448, 450; Cincinnati v. McCartney (1971), 30 Ohio App.2d 45, 48. However, a defendant's proximity to drugs may constitute some evidence of constructive possession. State v.Fairrow (Nov. 27, 1995), 4th Dist. No. 95CA2096. Mere presence in the vicinity of drugs, coupled with another factor probative of dominion or control over the contraband, may establish constructive possession.Fugate, supra; State v. Rocker (Sept. 1, 1998), 10th Dist. No. 97APA10-1341.
 {¶ 27} Here, Cooper argues there is no evidence that he possessed the heroin and cocaine found in the seat pocket behind the seat in which he was sitting. It is undisputed that the heroin and cocaine were located in the back pocket of the front passenger seat and were not in Cooper's actual possession. Therefore, the dispositive issue in this case is whether Cooper was in constructive possession of the heroin and cocaine. Even though Cooper was literally within inches of the marijuana and heroin, we find that the State failed to provide *Page 14 
sufficient evidence to prove that Cooper was in constructive possession of the heroin and cocaine.
 {¶ 28} The State contends that Cooper was in constructive possession of the heroin and cocaine, because he was within close proximity to the drugs. The State also contends that Cooper was in constructive possession, because he was in the vehicle when the drug transaction occurred at the residence under surveillance, he knew about the drugs in the vehicle, he knew that McGraw was a drug dealer and McGraw and Miller were selling drugs at the residence, he was in the vehicle from Columbus to Marion, which would allow him to have control over the drugs found in the pocket behind his seat, and he had used powder cocaine a few days prior.
 {¶ 29} However, the State has failed to present any evidence that Cooper was conscious that the heroin and cocaine were located in the pocket behind his seat. Specifically, it is undisputed that Cooper indicated that, while he knew that drugs were inside the vehicle, he did not know specifically where the drugs were or who had the drugs in the vehicle. There was no evidence that a person seated in the front passenger seat of the vehicle would be physically capable of reaching an object located in the pocket on the back side of the seat in which he was sitting, and certainly no evidence that Cooper had made any attempt to do so. Additionally, Cooper indicated through his conversation with Detective Isom that he never touched the drugs, which were found in the pocket behind his seat, and *Page 15 
that he was not a part of the drug transaction, which occurred while he was in the vehicle and the state offered no evidence to the contrary. The state presented no evidence that Cooper, in any way, possessed, or had any ability to control, the heroin and or the cocaine. Thus, reviewing the evidence presented in a light most favorable to the prosecution, we cannot conclude that any rational trier of fact could be convinced beyond a reasonable doubt that Cooper knowingly exerted dominion or control over the heroin and cocaine found in the pocket behind his seat. It would appear manifestly clear that Cooper's conviction on these two charges was a result of guilt byassociation.
 {¶ 30} Accordingly, Cooper's first assignment of error is sustained.
 {¶ 31} Assignments of Error Nos. II III {¶ 32} In his second assignment of error, Cooper argues that his convictions for possession of cocaine and heroin are against the manifest weight of the evidence. In his third assignment of error, Cooper argues that he was denied effective assistance of counsel. Our disposition of Cooper's first assignment of error renders Cooper's second and third assignments of error moot, and we decline to address them. App.R. 12(A)(1)(c).
 {¶ 33} Having found error prejudicial to the appellant herein, in the *Page 16 
particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment Reversed and cause remanded.
PRESTON and WILLAMOWSKI, JJ., concur.
[1] We note that Cooper does not allege error in his conviction for tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. Therefore, our review is limited to Cooper's possession of cocaine and heroin convictions. *Page 1