OPINION
{¶ 1} Appellant, Theodis Draper, appeals his conviction in the Jefferson County Court of Common Pleas following a jury trial for a single count of possession of drugs, in violation of R.C. 2925.11(A) and (C)(4)(e), a felony of the first degree. Appellant contends that the trial court erred when it denied his Civ. R. 29 motion for acquittal, and that the manifest weight of the evidence did not support the verdict. In fact, the greater weight of the evidence establishes that Appellant was in constructive possession of drugs, and, as a consequence, both of his assignments of error are overruled.
 {¶ 2} The following facts are taken from the trial testimony of Officer Jeffrey Kamerer of the Wells Township Police Department unless otherwise noted. On July 4, 2007, at approximately 3:00 a.m., Kamerer began following a red Jeep traveling northbound on State Route 7 between Brilliant and Mingo Junction, traveling at 70 miles an hour. (Trial Tr., pp. 204-205.) Because the posted speed limit was 55 miles per hour and the vehicle was traveling left of the center line, Kamerer executed a traffic stop. (Trial Tr., p. 205.)
 {¶ 3} While speaking with the driver of the Jeep, Raymont Nichols (Appellant's cousin), Kamerer noticed that Appellant, who was in the passenger seat, was nervous and kept putting his hands in his pockets. While waiting for a response from the dispatcher on the status of Nichols' driver's license, Nichols blurted out, "[t]here's no dope in here." (Trial Tr., p. 205.) Kamerer asked Nichols whether there were, indeed, drugs in the car, but Nichols responded that there were not. (Trial Tr., *Page 2 
p. 206.) Kamerer then asked Appellant if there were any drugs in the car, and Appellant responded, "[t]hat's for me to know and you to find out." (Trial Tr., p. 206.)
 {¶ 4} As a consequence, Kamerer contacted Lieutenant Christopher Taylor of the Mingo Junction Police Department for assistance. Taylor arrived with a canine that was trained and certified by the State of Ohio for drug detection. While circling the vehicle, the dog "indicated" that it detected drugs. (Trial Tr., p. 207.) Kamerer asked both occupants to step out of the vehicle. He patted down both individuals and placed them in the back of the cruiser. (Trial Tr., p. 208.) Then, Kamerer, Taylor, and a third officer, Jefferson County Sheriff's Department Deputy Christopher Vinci, searched the back cargo portion of the Jeep.
 {¶ 5} According to Vinci, he found what he believed to be a very small rock of crack cocaine hidden under a pile of clothes in the back hatch of the cargo floor. (Trial Tr., p. 303.) The substance was field tested and identified as crack cocaine, which prompted Vinci and Kamerer to continue the search. (Trial Tr., pp. 303-304.) After moving more clothing, Vinci discovered a potpourri carpet deodorizer canister. He smelled the white powder inside, which smelled like potpourri, but the top of the canister appeared to have been cut. (Trial Tr., pp. 304-305.)
 {¶ 6} Vinci returned the canister to its original spot underneath the pile of clothes, and Taylor brought the dog through the front of the Jeep. (Trial Tr., p. 306.) The dog worked its way to the back of the cargo area and began to scratch at the pile of clothing until the canister was uncovered. Kamerer dumped the canister onto a *Page 3 
piece of cardboard, which revealed a plastic bag containing a baseball-sized object that appeared to be crack cocaine. (Trial Tr., p. 307.)
 {¶ 7} According to Kamerer, after the canister was discovered and seized, Nichols told him that the drugs belonged to Appellant. (Trial Tr., p. 216.) When Kamerer asked Appellant if the drugs belonged to him, Appellant responded, "[f]uck you, I'm not telling." (Trial Tr., p. 217.) Kamerer and Vinci handcuffed Nichols and Appellant, read them their Miranda warnings, and transported them to the Jefferson County jail. (Trial Tr., p. 219.)
 {¶ 8} Later in the day, Kamerer returned to the jail in order to interview Appellant and Nichols. (Trial Tr., p. 221.) Appellant refused to be interviewed, stating "[f]uck you, you and the dope." (Trial Tr., p. 225.) However, Nichols executed a written waiver of his Miranda rights and provided an oral statement regarding the events of July 4, 2007. The oral statement was not recorded, and Kamerer did not preserve his notes. (Trial Tr., pp. 221-222, 225.)
 {¶ 9} According to Kamerer's testimony, Appellant asked Nichols to drive him to Steubenville to deliver drugs. (Trial Tr., p. 223.) Nichols watched as Appellant cut the top off of a carpet deodorizer bottle and concealed crack cocaine in the container. Appellant promised to give Nichols gas money to take him and the drugs to Steubenville. Later, when Kamerer signaled the Jeep to pull over, Appellant instructed Nichols to flee so he could discard the crack cocaine, however, Nichols refused and pulled over. (Trial Tr., p. 224.) *Page 4 
 {¶ 10} One week later, following a preliminary hearing, Kamerer conducted a second interview with Nichols at Nichols' request. (Trial Tr., pp. 225-226.) Nichols executed a second written waiver of his Miranda rights. (Trial Tr., p. 226.) Kamerer testified that Nichols told him that he was afraid of being "beaten up" by Appellant. (Trial Tr., pp. 240-241.) Because Nichols could not write his own statement, Melissa Rath, a dispatcher for the Jefferson County Sheriff's Department, memorialized his statement. (Trial Tr., pp. 227-228.)
 {¶ 11} According to the written statement, Appellant asked Nichols to ride with him to Steubenville. (Trial Tr., p. 230.) Nichols only became aware of the crack cocaine when he asked Appellant if there were drugs in the car while they were stopped at a gas station in Bridgeport, Ohio. Appellant answered "yes." Nichols expressed his dismay and his hope that the men would not get pulled over by the police. Nichols asked where the drugs were located in the car, and Appellant responded that they were in the back in a carpet deodorizer bottle. (Trial Tr., p. 231.)
 {¶ 12} Nichols was tried and convicted of drug possession one week prior to the trial in the above-captioned case. (Trial Tr., p. 148.) Nichols did not take the stand in his own defense.
 Assignment of Error # 1 {¶ 13} "THE COURT ERRED IN DENYING THE DEFENSE MOTION FOR RULE 29 ACQUITTAL."
 {¶ 14} Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally *Page 5 
sufficient to support the jury verdict as a matter of law. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins (1997),78 Ohio St.3d 380, 386-387, 678 N.E.2d 541, citing Tibbs v. Florida
(1982), 457 U.S. 31, 102 S.Ct. 2211.
 {¶ 15} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147,529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Therefore, an appellate court must view the evidence in a light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 547 N.E.2d 492;Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 16} Appellant contends that there was insufficient evidence to support the jury's conclusion that he "possessed" the crack cocaine. To prove that a defendant is guilty of possession of drugs under R.C. 2925.11(A), the state must demonstrate that he did, "knowingly obtain, possess, or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has *Page 6 
knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 17} R.C. 2925.01(K) defines "possess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 18} In Ohio, possession may be actual or constructive. "[T]he mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object."State v. Hankerson (1982), 70 Ohio St.2d 87, 91, 434 N.E.2d 1362. Furthermore, if the evidence demonstrates that a defendant is able to exercise dominion or control over an illegal object, the defendant can be convicted of possession. State v. Robinson, 8th Dist. No. 90731,2008-Ohio-5580, ¶ 86.
 {¶ 19} Appellant did not testify on his own behalf, nor did he provide a statement to the police following his arrest. As a consequence, Appellant's conviction turns on the testimony provided by Nichols and Kamerer. At trial, Nichols recanted virtually everything in his oral and written statements, with the exception of finding out about the drugs in Bridgeport. (Trial Tr., p. 157.) However, when he was asked how he learned about the drugs, he invoked his Fifth Amendment right against self-incrimination. He also admitted to signing the written statement, but claimed that *Page 7 
he only signed it because Kamerer told him that if he signed the written statement Kamerer would let him "get out." (Trial Tr., p. 165.)
 {¶ 20} Appellant first contends that Rath admitted on the stand that she did not accurately record Nichols' statement. Appellant's argument is based upon Rath's concession that she was forced to used a "carat" to add the phrase "in Bridgeport" to the written statement because she wrote "gas station" and then had to go back and fill in the additional information. (Trial Tr., pp. 199-200.) Based on Rath's testimony, Appellant concludes that, "[t]here is no record of what [Nichols] actually said." (Appellant's Brf., p. 6.)
 {¶ 21} First, the fact that Rath went back and corrected the written statement bolsters, rather than calls into question, its accuracy. Second, Appellant's challenge goes to the weight afforded to the written statement, not its admissibility, and, therefore, has no relevance in an assignment of error based upon the sufficiency of the evidence.
 {¶ 22} Appellant next argues that, "Nichols made so many different statements, it was impossible to be convinced beyond a reasonable doubt that Appellant Draper possessed the drugs in any way, whether actually or constructively." (Appellant's Brf., p. 7.) Appellant appears to assert that Nichols' inconsistent testimony somehow cancels itself out and, as a consequence, the jury may not consider any version of his story. While it is true that Nichols' story changed dramatically from July 4, 2007 to the date of trial, each of his statements constituted evidence before the trial court to be weighed by the jury. *Page 8 
 {¶ 23} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." Jenks, supra, at paragraph two of the syllabus. In the case sub judice, it is clear that, if the jury credited either the oral or written pre-trial statements made by Nichols, and/or the testimony of Kamerer, there was sufficient evidence to support the guilty verdict. Accordingly, Appellant's first assignment of error is overruled.
 Assignment of Error # 2 {¶ 24} "THE CONVICTION FOR POSSESSION IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court, "has the authority and duty to weigh the evidence and to determine whether the findings of * * * the trier of the facts were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State exrel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345,82 N.E.2d 709.
 {¶ 26} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a *Page 9 
manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 27} The manifest weight of the evidence test goes to whether the evidence is persuasive or believable. Thompkins, supra, at 387,678 N.E.2d 541. "Weight is not a question of mathematics, but depends on [the evidence's] effect in inducing belief." (Emphasis in original.) Id., citing Black's Law Dictionary (6th Ed. 1990) 1594.
 {¶ 28} "[W]hen reviewing whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, consider the credibility of the witnesses, and determine whether `the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Duque, 2005-Ohio-4187, ¶ 19, citingThompkins, supra.
 {¶ 29} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."Thompkins, at 387, citing Tibbs, supra. An appellate court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. To reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required. Id. at 389, 678 N.E.2d 541.
 {¶ 30} In his brief, Appellant cites State v. Cooper, 3rd. Dist. No. 9-06-49, 2007-Ohio-4937, in support of his argument that the manifest weight of the evidence favored an acquittal in his case. InCooper, the defendant was a passenger in an *Page 10 
automobile that was intercepted by the police. The defendant inCooper admitted that he knew that there were drugs in the car, and that he knew that the driver and other passenger had just completed a drug deal, but denied being a part of the drug deal. Id. at ¶ 10. The Third District ultimately reversed his conviction for drug possession based on the fact that he did not know where the drugs were located in the car, and he was not able, nor did he attempt, to retrieve the drugs. Id. at ¶ 29.
 {¶ 31} Here, the oral statement made by Nichols established that Appellant put the drugs in the vehicle and that he intended to sell the drugs when he and Nichols reached their destination. Nichols' written statement establishes that Appellant was aware of the drugs and knew where they were stored in the vehicle.
 {¶ 32} Although Nichols recanted his oral and written statements, it is the province of the jury to accept or reject the evidence adduced at trial. DeHass, supra, paragraph one of the syllabus ("the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.") The jury may have reasonably inferred that the changes in Nichols' written statement, when compared to his earlier oral statement, were the result of his discussion with his counsel at the preliminary hearing. The jury may also have reasonably inferred that Nichols recanted both statements in an effort to thwart his cousin's conviction, since he was unable to prevent his own conviction. Both inferences are wholly consistent with Kamerer's testimony at trial.
 {¶ 33} Having reviewed the case in its entirety, it is not clear that the jury "lost its way and created such a manifest miscarriage of justice that the conviction must be *Page 11 
reversed and a new trial ordered." Duque, supra, ¶ 19. Accordingly, Appellant's second assignment of error is overruled and his conviction is affirmed in full.
Donofrio, J., concurs.
DeGenaro, J., concurs. *Page 1