[Cite as *State v. Alexander*, 2018-Ohio-1433.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 16 MA 0113 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| THEODORE ALEXANDER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 13 CR 1154

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. John P. Laczko
3685 Stutz Drive, Suite 100
Canfield, Ohio 44406

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: April 12, 2018

WAITE, J.

{¶1} Appellant Theodore Alexander was convicted of murder and felonious assault following a jury trial in the Mahoning County Court of Common Pleas. The charges stem from an incident that occurred on September 29, 2013, after the body of Ivan West ("West") was found dead from a stab wound to the chest in the dining room of Appellant's apartment.

{¶2} Appellant timely raises two assignments of error on appeal. First, he alleges that statements he made to the police on the night of the incident and on October 22, 2013 should have been suppressed since he did not knowingly, voluntarily or intelligently waive his *Miranda* rights. Second, Appellant alleges that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. The record reflects that Appellant's statements to the police were made after he executed a form waiving his *Miranda* rights and that Appellant acknowledged he understood the rights he was waiving. Further, the state presented sufficient evidence that Appellant committed murder and the manifest weight of the evidence established beyond a reasonable doubt that Appellant committed the offenses for which he was convicted. Accordingly, his arguments on appeal lack merit and are overruled. The judgment of the trial court is affirmed.

Factual and Procedural History

{¶3} At 1:19 a.m. on September 29, 2013, Youngstown Police Department Officer Anthony Congemi ("Congemi") responded to a report that there had been a stabbing at 107 Hilton Avenue in Youngstown. Congemi proceeded to the address, the upper floor of a duplex, where he found West lying face down on the dining room

floor. West appeared to be alive when Congemi arrived. Appellant and his neighbor, Mario Townsend ("Townsend") were also present in the apartment. Congemi determined that Appellant resided at the apartment. Emergency services arrived and Congemi and another officer, Anthony Marzullo ("Marzullo"), began to process the crime scene. A call was also placed to Detective Sergeant Ronald Rodway ("Rodway"), who was assigned to investigate the incident. When Rodway arrived at the scene he spoke to Appellant. Appellant told Rodway that he heard a knock at his downstairs door. Answering the knock, he saw West, whom he knew, at the door. West was holding his chest but did not speak. After they walked upstairs, West informed Appellant he had been stabbed "down the street" and then collapsed on the dining room floor. Appellant went next door to get his neighbor, Townsend, who instructed Appellant to call 911. Townsend and Appellant proceeded back to Appellant's dining room and awaited the arrival of emergency services. Appellant indicated to Rodway that before the stabbing occurred, he had not seen West for a week.

{¶4} Rodway also spoke to Townsend and Cathy Howell ("Howell"), Appellant's girlfriend who also resided at the apartment. Townsend confirmed that Appellant had come to his apartment looking for help. Contrary to Appellant's statement, however, Howell told Rodway that West had been at the apartment just two days earlier.

{¶5} Rodway testified that due to the conflicting statements as to when Appellant had last seen West, and Appellant's nervous appearance at the scene, he

asked Appellant to accompany him to the police station to make a formal statement. During this second interview, Appellant told Rodway that once he and West walked up to the dining room together, West took off his shirt before he collapsed on the floor. Appellant went into his bathroom and got dressed before going to Townsend's apartment for help. When Appellant and Townsend came back to the apartment, West appeared to still be alive. Appellant then said that West may have spent the night at his apartment two days earlier, but Appellant was not sure because he was staying at another house in the neighborhood, putting up drywall. Rodway asked for information about the homeowners of this property so that they could be interviewed. Appellant stated that he did not want to give this information, because he did not want these homeowners to become involved. After being pressed further by Rodway for the information, Appellant changed his story, now saying that he was home on the night that Howell told police West spent the night, but that he was in the other bedroom with his girlfriend and did not know for sure whether West was there.

{¶6} On October 22, 2013, Appellant was summoned to the Youngstown Police Department for a third interview with Rodway. During this interview, Appellant told Rodway that after West arrived at his apartment, he sent West upstairs alone while he went to Townsend's apartment for help. When Appellant arrived back at his apartment with Townsend, they found West lying on the dining floor with his shirt off, bleeding but apparently still alive. Appellant stated at this interview that West never told him that he had been stabbed, but Appellant noticed West was holding his chest when he arrived.

**{¶7}** On October 31, 2013, Appellant was charged with two counts of murder and one count of felonious assault. On December 10, 2014, Appellant's counsel filed a motion to suppress, seeking to suppress four separate pieces of evidence: (1) the statements Appellant made to police officers on September 29, 2013 and October 22, 2013; (2) evidence collected from Appellant's apartment on the night of the incident; (3) evidence obtained from Appellant's shirt which was seized from Appellant on the night of the incident; and (4) evidence obtained from a search of Appellant's cell phone.

**{¶8}** A hearing on the motion to suppress was held on April 2, 2015. The trial court ordered both parties to file post hearing memorandums. The trial court denied all of the requests with the exception of the request to suppress evidence from Appellant's cell phone. Following a jury trial, Appellant was convicted of murder in violation of R.C. 2903.02(B) and felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. The trial court merged the counts and sentenced Appellant to a prison term of fifteen years to life.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT AND VIOLATED HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT BY OVERRULING APPELLANT'S MOTION TO SUPPRESS AND ADMITTING INTO EVIDENCE APPELLANT'S STATEMENTS GIVEN TO POLICE ON SEPTEMBER 29, 2013, AND OCTOBER 22, 2013.

{¶9}  Appellant's first assignment of error addresses the trial court's failure to grant his motion to suppress as it relates to the interviews conducted by police on September 29, 2013 and October 22, 2013.  Appellant asserts that the state failed to establish that he possessed a full awareness of his *Miranda* rights, or of the consequences of waiving those rights, prior to speaking with police.

{¶10}  The hearing on the motion to suppress was held on April 2, 2015.  The trial court denied all of Appellant's requests to suppress evidence with the exception of the evidence retrieved from his cell phone.  Testimony was provided by Rodway.  Two written *Miranda* waivers were admitted into evidence at the hearing.  Rodway testified about obtaining a search warrant and providing Appellant with *Miranda* warnings before each interview.  The court held that based on the totality of the circumstances, Appellant knowingly waived his *Miranda* rights prior to making his statements to the police on September 29, 2013 and October 22, 2013.  While the trial court concluded that all of the evidence gathered from Appellant's apartment, including Appellant's shirt, was properly obtained by the police through valid searches, because the police lacked probable cause to search his phone any evidence resulting from the cell phone search would be suppressed.

{¶11}  An appellate court review of a ruling on a motion to suppress involves mixed questions of law and fact.  "In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."  *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (1994).  We must accept the trial court's findings

as true if they are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 82 (9th Dist.1994). Thereafter, an appellate court must independently determine whether the facts satisfy the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds as stated in *Village of McComb v. Andrews*, 3d Dist. No. 5-99-41, 2000-Ohio-1663 (Mar. 22, 2000).

**{¶12}** A review of the record reveals that it contains *Miranda* waivers signed by Appellant on September 29, 2013 and again on October 22, 2013. Despite the undisputed existence of these signed waivers, Appellant argues that the statements he made to the police should be suppressed. Appellant argues that waiver of his *Miranda* rights could not have been voluntary for three reasons: (1) Appellant was under the influence of alcohol on the night of the incident; (2) Appellant was inappropriately transferred from jail on October 22, 2013 for the interview with Rodway, because he had not asked to speak with Rodway; and (3) the police video of this interview contains no discussion about Appellant's decision to waive his *Miranda* rights, but only about whether he understood those rights.

**{¶13}** A suspect's waiver of his right not to incriminate himself must be made voluntarily, knowingly and intelligently. *State v. Shakoor,* 7th Dist. No. 01 CA 121, 2003-Ohio-5140, ¶ 18, citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record reveals that Appellant executed a written waiver of his *Miranda* rights on both September 29, 2013 and October 22, 2013. "[E]vidence of

a written waiver form signed by the accused is strong proof that the waiver is valid." *State v. Eley,* 77 Ohio St.3d 174, 178. 672 N.E.2d 640 (1996).

**{¶14}** "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Otte,* 74 Ohio St.3d 555, 562, 660 N.E.2d 711 (1996), citing *Colorado v. Connelly* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Evidence of coercive police activity is a necessary predicate to finding that a confession is not voluntary pursuant to *Miranda. Connelly, supra.*

**{¶15}** A trial court must consider the totality of the circumstances in making a determination as to whether the defendant has validly waived his *Miranda* rights. *State v. Edwards,* 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), judgment vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). The totality of the circumstances includes the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; whether any physical deprivation or mistreatment existed; and the existence of threat or inducement. *Id.*

**{¶16}** Appellant contends there was evidence that he was under the influence of alcohol on the night of the incident. He states that he consumed two beers before the incident, and that his physical appearance in the videotaped interview lends credence to his claim that he was intoxicated. He claims that because he was intoxicated, he could not have validly waived his *Miranda* rights. This Court has held that the mere presence of drugs or alcohol in a person's system will not, in itself,

render a confession inadmissible. *State v. Foden,* 7th Dist. No. 08 CO 44, 2009-Ohio-6532, ¶ 22. Evidence must be presented that drugs or alcohol "sufficiently impaired the confessor's ability to reason." *Id.*

**{¶17}** Appellant's assertion that he was sufficiently impaired by alcohol on the night of the incident is not borne out by the evidence in the record. There was no testimony at either the suppression hearing or at trial that Appellant was under the influence of drugs or alcohol. Three police officers testified at trial. None of them were asked on direct or cross-examination about Appellant's appearance or whether he appeared to be under the influence of drugs or alcohol. There is nothing in the record to indicate that Appellant consumed any alcohol on the night in question which might impair his ability to waive his *Miranda* rights.

**{¶18}** Appellant contends his second *Miranda* waiver was invalid because when he was summoned for a second interview with Rodway, while he was admittedly read his *Miranda* rights, there "were no safeguards herein to insure Appellant comprehended those rights or validly waived them." (8/22/17 Appellant's Brf., p. 8.) He appears to complain that he was compelled to speak to police, because he was taken to see Rodway and had not first voluntarily asked to speak with Rodway. Appellant presents no evidence that the signed waiver executed by him on either September 29, 2013 or October 22, 2013 was obtained by use of any coercive police activity. Appellant does not cite to anything in the record which may indicate that the police engaged in any activity that could be deemed coercive.

{¶19} Rodway's testimony at the suppression hearing was virtually identical to his testimony. A review of his testimony reveals that Appellant made the statements he sought to suppress during three different conversations with Rodway. Rodway testified that Appellant gave him three different variations of the incident in each of the interviews. Rodway testified that since Appellant's comments to him at the scene appeared to differ from those of his live-in girlfriend, he elected to have Appellant come to the station that night to give a formal statement. (6/28/16 Tr., p. 342.) Also, at the scene Appellant told Rodway that he had not seen West in a week. Howell stated that West had been at the apartment two days earlier.

{¶20} Rodway testified that prior to the interview at the police station on the night of the incident, Appellant was read his *Miranda* rights and that Appellant agreed to talk with police officers. (6/28/16 Tr., p. 350.) Appellant does not dispute this evidence. Nor does he dispute that he signed a written waiver of his *Miranda* rights that night before providing his statement to the police. Appellant changed his story during his second interview with regard to when he last saw West.

{¶21} Rodway testified that he interviewed Appellant again on October 22, 2013 at the Youngstown police station. Rodway again read Appellant his *Miranda* rights and Appellant again agreed to talk to him. Appellant does not contest this evidence or that he executed a second written waiver of his *Miranda* rights. During this third encounter, Appellant changed his story again regarding how the events transpired on the night of the incident.

**{¶22}** The trial court clearly believed Rodway's testimony at the suppression hearing was credible. There was no conflicting evidence presented. Rodway's testimony at the suppression hearing was the same as his trial testimony. Based on the record before us, the trial court committed no error in refusing to grant Appellant's motion to suppress his statements to police. Appellant's first assignment of error lacks merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT DENIED APPELLANT DUE PROCESS UNDER THE FOURTEENTH AMENDMENT DUE TO THE FACT HIS CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.

**{¶23}** Appellant appears to argue both sufficiency and manifest weight of the evidence in his second assignment in that he mentions both.

**{¶24}** Sufficiency of the evidence is a legal question dealing with adequacy. *State v. Pepin–McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶25}** "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 7th Dist. No.

07 JE 45, 2009-Ohio-1023, ¶ 14, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). To discharge the state's burden when prosecuting a criminal offence, " 'probative evidence must be offered' on 'every material element which is necessary to constitute the crime.' " *State v. Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶ 8, citing *State v. Martin*, 164 Ohio St. 54, 57, 128 N.E.2d 7 (1955). In a sufficiency review, a reviewing court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 7th Dist. No. 13 MA 34, 2015-Ohio-1882, ¶ 14, citing *State v. Merritt*, 7th Dist. No. 09 JE 26, 2011-Ohio-1468, ¶ 34.

**{¶26}** Appellant was convicted of violating both R.C. 2903.02(B) and R.C. 2903.11(A)(2). R.C. 2903.02(B) states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree."

**{¶27}** R.C. 2903.11(A)(2) provides in relevant part that:

No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶28}** Appellant contends the state failed to present sufficient evidence at trial showing that he committed the offense. He complains that only circumstantial

evidence was presented, but no direct eyewitness or other direct evidence to link Appellant to this crime.

**{¶29}** The state highlights the testimony from a number of police officers that were present at the scene and assisted in conducting the investigation. Marzullo and Congemi both testified that they conducted a thorough search of Appellant's residence including the exterior and stairwell, looking for blood evidence with which to corroborate Appellant's account that West told him he was stabbed elsewhere. Rodway testified that the area outside was "very well lit" on the night of the incident and no blood evidence was found outside or in the stairwell. (Tr., p. 344.) The only blood evidence that was found was located in Appellant's dining area and the kitchen sink near where West's body was found. (Tr., p. 212.) Marzullo testified that a number of knives were discovered in Appellant's apartment, including a knife in the kitchen sink which appeared to have a number of blood droplets nearby, a knife in one bedroom of Appellant's apartment, and a third in a second bedroom.

**{¶30}** Andrea Weisenburger, a forensic scientist assigned to the case, testified that she analyzed two of the knives and a swab of the blood from the kitchen sink area. She also had DNA standards from both West and Appellant. The kitchen knife blade results were inconclusive, because there was insufficient DNA for testing. The DNA profile on the kitchen knife handle was consistent with Appellant's DNA profile. (Tr., pp. 322-323.) West's DNA profile was excluded from the handle of the kitchen knife and from a knife found in one of the bedrooms. (Tr., pp. 330-331.)

{¶31} Rodway testified that he spoke with Appellant on three occasions. The first was at the scene, where Appellant gave information as to when he last saw West that differed from the information provided by his neighbor and from his live-in girlfriend. For that reason, Rodway conducted a formal interview at the station. Appellant's story at the station changed in regard to when he last saw West and also as to how the events unfolded at the scene. Appellant originally stated that West showed up at his door claiming to be stabbed in the street and that he had not previously seen West in a week. Appellant and West walked upstairs together where West took off his shirt and collapsed on the floor. Appellant said he then went to get Townsend for help. During the second interview, Appellant stated that West appeared at his door but said nothing. The two went upstairs together where West took off his shirt and collapsed on the floor. Appellant went to the bathroom to change and then went to get Townsend.

{¶32} We note that this second statement of events differs only slightly to the information provided at the scene. However, when confronted by Rodway during the interview with information that Appellant may have seen West only a few days prior to the incident, rather than a week as Appellant earlier stated, Appellant said that he had been drywalling someone's house and did not know whether West had made an overnight stay at Appellant's home. When questioned about contact information for the homeowners for whom Appellant was allegedly hanging drywall, Appellant initially refused to answer, saying he wanted to avoid getting those individuals involved. Appellant then changed his story again, dropping his story about drywalling and now

saying that West may have made an overnight visit to Appellant's home a few days earlier, but Appellant had stayed in his bedroom and did not see West.

**{¶33}** Rodway testified that he spoke with Appellant a third time on October 22, 2013, at which point Appellant changed his story again. (Tr., pp. 365-366.) Appellant now claimed that he sent West upstairs alone while Appellant went to Townsend's apartment to seek help. Appellant and Townsend returned together to find a shirtless West, collapsed on Appellant's dining room floor but still breathing. Appellant stated in this interview that West did not say anything about being stabbed when Appellant initially encountered him, but was holding his chest.

**{¶34}** The state also presented testimony of Dr. Joseph Ohr ("Ohr") who had performed the autopsy on West. Ohr testified that West died from a stab wound which penetrated his heart and went into the right ventricle. (Tr., p. 284.) Ohr also testified that the knife found in Appellant's kitchen sink was "most consistent with the decedent's death." (Tr., p. 289.)

**{¶35}** Appellant contends that his story of events remained consistent throughout, but this is clearly contradicted by Rodway. The state presented testimony from at least three other witnesses which contradicted Appellant's statements to the police, and Appellant's statements continued to change over time. The kitchen knife found in Appellant's kitchen sink was consistent with the decedent's wounds. No blood was found outside the apartment or in the stairwell, but was found in Appellant's dining room and kitchen. This record reflects that the state presented sufficient circumstantial evidence that, if believed, would lead a reasonable person to

conclude that Appellant caused West's death. Appellant's sufficiency of the evidence argument is without merit.

**{¶36}** Appellant also contends his convictions were against the manifest weight of the evidence. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *Thompkins* at 387. "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *Id.*

**{¶37}** When reviewing a manifest weight of the evidence argument, a reviewing court must examine the entire record, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, 389. Only in exceptional circumstances will a conviction be reversed as against the manifest weight of the evidence. *Id.* This strict test for manifest weight acknowledges that credibility is generally the province of the factfinder, who sits in the best position to accurately assess the credibility of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶38}** When, as here, there are two fairly reasonable versions of the events which occurred and neither is wholly unbelievable, it is not the province of the

appellate court to determine which version should be believed. *State v. Walenciej,* 7th Dist. No. 07 JE 006, 2007-Ohio-7206, ¶ 42.

**{¶39}** In the instant matter the jury heard all of the testimony, including Appellant's, and was presented with all of the evidence. Despite Appellant's assertion, a lack of direct evidence is inconsequential in a manifest weight challenge as it does not undermine credible testimony and other circumstantial evidence. *State v. Frye,* 11th Dist. No. 2005-A-12, 2006-Ohio-1857, ¶ 41. This record also shows that the manifest weight of the evidence presented by the state supported Appellant's convictions. Accordingly, Appellant's second assignment of error is without merit.

**{¶40}** Based on the foregoing, Appellant's assignments of error lack merit and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, P.J., concurs.