[Cite as *State v. White*, 2023-Ohio-3591.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DONALD E. WHITE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CO 0049**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2021 CR 559

**BEFORE:**
Cheryl L. Waite, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.
Remanded.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor and *Atty. Shelley M. Pratt*, Assistant Prosecutor, 135 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee

*Atty. Rhonda G. Santha*, 6401 State Route 534, West Farmington, Ohio 44491, for Defendant-Appellant

Dated: September 28, 2023

---

_____

**WAITE, J.**

**{¶1}** Appellant Donald E. White appeals an October 28, 2022 Columbiana County Court of Common Pleas judgment entry convicting him of several charges related to a hit and run accident that caused the death of a minor. Appellant argues that a possession of cocaine charge should have been severed at trial from the offenses related to the accident, as they were unrelated. He also argues that his convictions were not supported by sufficient evidence and that the trial court erred by failing to instruct the jury on a lesser-included charge. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed as to Appellant's convictions. However, the matter is remanded on a limited basis to allow the state to elect on which count to proceed to sentencing regarding the merged convictions.

<u>Factual and Procedural History</u>

**{¶2}** On October 23, 2021, two thirteen-year-old boys, A.H. and M.T., at just before 9:00 p.m., were riding their bikes south along State Route 164 in Columbiana, Ohio. It appears that the boys were riding to the right of the road, with on-coming traffic driving towards them. A.H. rode approximately ten feet ahead of M.T. A.H. had reflectors on his pedals and M.T. had reflectors on the back of his seat and both pedals.

**{¶3}** At some point during their ride, M.T. heard a truck driving behind him and called out to A.H. to move over. The two boys traveled further out of the roadway, near a grassy area next to the road. Suddenly, the truck pulled off of the road, crossed the white fog line and drove alongside M.T., who testified that it was so close he could have reached out and touched the vehicle with his hand. The vehicle drove around him and then straight into A.H. as the driver attempted to return the truck to the road. M.T. watched

as A.H. was launched approximately seven to eight feet into the air and then landed approximately sixty feet ahead.

{¶4}   M.T. testified as to the impact itself and the driver's actions:

Q.  Yeah.  After the – the truck is passing you, you said it hit [A.H.]?

A.  Yes, it swerved around me.

Q.  Swerved around you and then what did it do next?

A.  Hit [A.H.] and went faster.  Zoomed off.  Didn't – yeah.

Q.  When the truck hit [A.H.], did it appear to you that the truck had gone outside of the roadway?

A.  Yes.

(Trial Tr., p. 247.)

{¶5}   As the truck drove off at an accelerated rate of speed, M.T. ran to A.H. and placed his hand on his back.  While he could feel A.H. breathing, A.H. made gurgling sounds and was not responsive.  M.T. used his cell phone to call 911 and later used the flashlight on the phone to flag over the responding officer, Trooper William Kanters.  When Trooper Kanters reached A.H., A.H. was unresponsive and had no apparent vital signs.  A.H. was life-flighted to a hospital where he was pronounced dead.

{¶6}   After A.H. was transported to the hospital, the Ohio State Patrol began investigating the scene and the general area.  M.T. informed Trooper Kanters that "the truck barely missed him and struck [A.H.].  It did go off the road a little bit, then came back

on." (Trial Tr., p. 175.) M.T. could not give much information about the vehicle, partly due to the poor lighting of the area and partly due to his apparent shock.

{¶7} Officers located several pieces of debris associated both with A.H.'s bicycle and the vehicle that struck him. Among the debris, officers located a headlight bucket, which had a serial number that officers used to determine the year, make, and model of the truck. At some point during the investigation at the scene, Dep. Luke Skidmore of the Columbiana County Sheriff's Office learned that an officer "saw headlights off in the distance on Crestview Road, parked in a fashion that would be inconsistent with the east – and westbound traffic on that road, and the headlights weren't moving." (Trial Tr., p. 211.) Although Dep. Skidmore could not get to the vehicle at the time, he later learned that Appellant and his wife had returned to the area and parked their car facing the crime scene. Those were the lights observed by officers.

{¶8} Officers found the truck parked approximately two to three miles down the road in a pull off area. Officers observed damage to the vehicle consistent with the debris found at the scene. After running the license plate number through "LEADS," officers were able to determine that Appellant owned the truck. As initial attempts to locate Appellant were unsuccessful, Sgt. Ben Dennison began monitoring cell phone tower pings from Appellant's phone and learned that he was in Canfield, which is located in Mahoning County, near the intersection of State Route 224 and Ironwood Boulevard. He then tracked the phone as it moved south on State Route 11 and eventually back to Appellant's residence.

{¶9} Trooper Josh Yeager returned to Appellant's residence and encountered Appellant's wife, Ruth White. Ruth initially claimed that she did not know where the truck

was and that they believed it had been stolen. She also claimed that Appellant was at his nephew's house all day. When Trooper Yeager informed her the vehicle was involved in a crash that caused a death, "[h]er shoulders sunk forward. She started to look down at her hands. And she was consistently fidgeting with her hands, where she was clasping them and unclasping them, touching her fingers." (Trial Tr., p. 208.)

**{¶10}** When Trooper Yeager told Ruth that he did not believe her, she finally admitted that Appellant had instructed her to tell investigators he was at his nephew's house all day and that he had hit a mailbox with his truck. She also told investigators that Appellant had asked her to pick him up at his nephew's house and take him to Mahoning County to buy cocaine. She admitted that they were in the car parked near the scene and were watching the investigation.

**{¶11}** When Trooper Yeager told Appellant his truck was involved in a crash "[h]e was very casual. It was an abnormal interaction for me, because he was very calm and collected. It was a conversational tone." (Trial Tr., p. 207.) Sgt. Dennison also spoke to Appellant and informed him that a child had been killed in the accident.

Q. What was this Defendant's reaction when you told him that a child had been killed on State Route 164?

A. There was really no reaction, just nonchalantly –

Q. Just emotionless?

A. Yes, that's how I would describe it.

(Trial Tr., p. 305.)

Case No. 22 CO 0049

{¶12} During the interaction, Appellant told Trooper Yeager that he thought he had hit a mailbox. At some point, Trooper Yeager placed Appellant in a cruiser, where he fell asleep.

{¶13} Deputy Eric Buday testified at trial that Ruth told him Appellant would typically smoke cocaine in the garage. Ruth provided consent to allow a search of the garage, resulting in the seizure of a "Choreboy," which is apparently "a copper scrubber type material" typically used to smoke drugs, and a baggie "tear off," the corner of a plastic bag in which drugs are placed. The corner is twisted around the drug and torn off, to create a smaller baggie. (Trial Tr., pp. 324-325.) Ruth also consented to a search of Appellant's bedroom, where officers located the keys to the truck in Appellant's jacket pocket, a glass smoking pipe, and a hard rock-like substance found in a tobacco can, later determined to be .17g cocaine.

{¶14} Trooper Brian Cannon completed an accident reconstruction report. He testified that the area of the accident is "a primarily straight roadway. There is a curve south of the scene. It's fairly far back. Straight, level. No poles, trees, mailboxes, driveways, nothing like that along the roadway. It's just open road with field." (Trial Tr., p 369.) He observed a gouge in the road near the fog line, approximately three inches over the line, where he determined the point of impact occurred. Based on the marking, he concluded that there was sufficient room for Appellant to pass the cyclists without impacting them. (Trial Tr., p. 393.) He saw no signs of braking.

{¶15} On October 24, 2021, Appellant received a written citation for possession of drug paraphernalia related to the discovery of the pipe. On October 25, 2021, Appellant was charged with one count of aggravated vehicular homicide, a felony of the third degree

in violation of R.C. 2903.06(A)(2). On June 8, 2022, a superseding indictment charged Appellant with two counts of failure to stop after an accident, felonies of the second and third degrees in violation of R.C. 4549.02(A)(2); aggravated vehicular homicide, a felony of the third degree in violation of R.C. 2903.06(A)(2)(a); and possession of cocaine, a felony of the fifth degree in violation of R.C. 2925.11(A).

{¶16} While Appellant was jailed, he made incriminating statements at two separate times. The first of which occurred while he was receiving some sort of medical treatment approximately one week after he was jailed. Appellant had learned that M.T. initially reported to investigators that the truck that hit A.H. was white. Appellant's truck is a light color, but is not white. Appellant told the deputy who had accompanied Appellant to his treatment that someone else, driving a white truck, hit A.H. and he fled the scene. Appellant said that he later hit only the unoccupied bicycle. (Exh. 25.) Appellant also admitted that he was culpable for possession of cocaine, but believed that investigators unlawfully entered his home, and so he could not be convicted. The deputy used his phone to record Appellant once it became clear Appellant was talking about his case.

{¶17} The second instance was in a jail house call to his wife, where Appellant again claimed that he thought he had hit a mailbox, then said "I guess I should have just pulled the fuck over. I probably wouldn't be in here now." (Exh. 27, 9:00.) Apparently changing his mind, he told his wife "I should have kept driving [after he noticed his tire was flat] and got out of that area. But I called Donnie to get a tire and he come [sic] down to get a tire." (Exh. 27. 10:21.) When his wife responded that his friend Donnie probably was unaware an accident had occurred, Appellant told her that when his friend met up with him, he drove past the scene of the accident. (Exh. 27, 10:45.) He continued that

"we didn't get my truck out of there. Cause [sic] if they never connected my truck, they wouldn't have connected me." (Exh. 27, 11:15.) He stated that if not for the flat tire, "I'd have buried that truck." (Exh. 27, 11:36.)

{¶18} On October 19, 2022, Appellant filed a motion seeking to sever his possession of cocaine charge from the other charges for purposes of trial. The trial court denied Appellant's motion. Following a two-day trial, a jury convicted Appellant of all counts as charged. The court immediately proceeded to sentencing. On October 28, 2022, the court sentenced Appellant to an indefinite sentence of eight to twelve years (failure to stop), a five year definite sentence with a lifetime driver's license suspension (aggravated vehicular homicide), and one year of incarceration (possession of cocaine). The court ordered the sentences to run consecutively, for an aggregate total of fourteen to eighteen years of incarceration with credit for 369 days served. The two failure to stop convictions merged for purposes of sentencing. It is from this entry that Appellant timely appeals.

## ASSIGNMENT OF ERROR NO. 1

The Trial Court abused its discretion to Appellant's prejudice when his motion to sever the Controlled Substance offense was denied.

{¶19} Appellant argues that the court erred in denying his motion to sever the cocaine possession charge from the accident-related charges. He claims they were not of the same or similar character, not part of the same act or transaction, and were not connected in any way. Appellant urges that the search leading to the discovery of the

cocaine occurred sometime after the accident itself and there was no evidence that he was under the influence at the time of the offense.

**{¶20}** In response, the state argues Appellant crossed into Mahoning County to buy the cocaine immediately after causing the accident, and explains where Appellant was when, during their accident investigation, his phone pinged cell towers near Rt. 224 and Ironwood Blvd. The state explains that their discovery of the drugs corroborated statements related to the accident made by both Ruth and Appellant, and that the drugs are also highly relevant to demonstrate Appellant's lack of remorse and his mental state following the accident.

**{¶21}** Ohio law favors joining multiple criminal offenses in a single trial. *State v. Harrison*, 7th Dist. Jefferson No. 19 JE 0009, 2020-Ohio-3624, ¶ 55, citing *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991), citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "[J]oinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).

**{¶22}** Crim.R. 8(A) provides:

Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two

or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

**{¶23}** A defendant may move to sever trial of joined offenses pursuant to Crim.R. 14 if he can establish prejudice. *Lott, supra*, at 163. In relevant part, Crim.R. 14 provides that: "[i]f it appears that a defendant or the state is prejudiced by * * * such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

**{¶24}** The state may counter a claim of prejudice in one of two ways. The state may demonstrate that the evidence presented at trial for each offense is simple and direct. *State v. Moore*, 2013-Ohio-1435, 990 N.E.2d 625, ¶ 23 (7th Dist.), citing *State v. Coley*, 93 Ohio St.3d at 259, 754 N.E.2d 1129 (2001). Failing that, the state must show that all of the evidence presented in the combined trial would have been admissible in each case if tried separately. *Id.* If the state can demonstrate that the evidence is simple and direct, then it is not required to prove the stricter admissibility test. *State v. Harris*, 7th Dist. Mahoning No. 13 MA 37, 2015-Ohio-2686, ¶ 29, citing *State v. Johnson*, 88 Ohio St.3d 95, 109, 723 N.E.2d 1054 (2000). Evidence is simple and direct when it is apparent that the jury was not confused about which evidence proved which act. *Harrison* at ¶ 60, citing *State v. Harris*, 7th Dist. Mahoning No. 13 MA 37, 2015-Ohio-2686, ¶ 30; *Coley* at 259.

**{¶25}** At the outset, we note that all crimes were charged through a superseding indictment, and we do not have a situation where multiple indictments were joined. Thus, we first look to whether the incidents charged within the indictment were in some way connected.

Case No. 22 CO 0049

**{¶26}** The testimony demonstrated that Appellant had his wife drive him to purchase the cocaine almost immediately after the accident occurred. First, Appellant and his wife parked close to the scene to watch the investigators' progress. When investigators attempted to locate Appellant after linking him to the truck, he was in the process of purchasing the drugs. While they tracked the location of his phone, he was on his way home from purchasing those drugs. The search for these drugs occurred after Ruth told the officers that she drove him to get drugs right after the accident and she consented to the police search immediately after making that statement. Thus, while the drug offenses and accident related offenses are two different acts, the evidence shows that they are linked.

**{¶27}** While the state contends that there was no overlap in witnesses, this is misleading. Trooper Yeager, Dep. Luke Skidmore, Sgt. Dennison, Dep. Buday, and Trooper Mike Gorlea all provided testimony related to discovery of the cocaine. These same officers also testified about the investigation into the accident itself. Regardless, the evidence used to prove these crimes remained simple and direct. The sole evidence regarding cocaine possession was testimony that Ruth informed officers Appellant asked her to drive him to purchase drugs following the accident. Ruth consented to two separate searches, one of the garage and one of Appellant's bedroom, and drugs were discovered in these searches. It was clear at trial that investigators did not believe Appellant was under the influence at the time of the accident, and that Appellant's purchase and use of the drugs occurred afterwards. Based on this record, Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

The Trial Court erred in denying both Appellant's Rule 29 Motion to Dismiss as well as his request for jury instructions on a lesser included offense.

{¶28} Appellant argues that the trial court erroneously denied his motion to dismiss counts one and three, but he does not provide any substantive arguments. In this regard, Appellant has failed to comply with the appellate rules. Appellant instead focuses on his request for jury instructions on a lesser charge. In so doing, however, Appellant abandons the argument he made to the trial court, that the evidence supported negligent rather than reckless conduct. Instead, he claims on appeal that he should have been charged with a misdemeanor, and that he possessed a defense that could have resulted in an acquittal to the misdemeanor charges.

{¶29} The state responds that a plethora of evidence supports each of Appellant's convictions. As to a lesser included charge, the evidence adduced at trial fully supported a finding that Appellant's actions were reckless, not negligent. Because there was no evidence to support a lesser included offense, the state contends the trial court correctly declined to provide this instruction.

{¶30} In relevant part, Crim.R. 29(A) states:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

**{¶31}** Sufficiency of the evidence involves a legal question that addresses adequacy. *State v. Pepin-McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476 ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 7th Dist. Jefferson No. 07 JE 45, 2009-Ohio-1023, ¶ 14, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). An appellate court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 7th Dist. Mahoning No. 13 MA 34, 2015-Ohio-1882, ¶ 14, citing *State v. Merritt*, 7th Dist. Jefferson No. 09-JE-26, 2011-Ohio-1468, ¶ 34. In other words, we must determine whether the state presented evidence on every element of the charged crime that, if believed, supports conviction.

**{¶32}** Although Appellant provides no argument regarding this issue, in the interest of justice we will address the merits. At trial, Appellant raised a Crim.R. 29 motion regarding his failure to stop and aggravated vehicular homicide charges. We will limit review to only those offenses.

**{¶33}** In relevant part, R.C. 4549.02 provides:

(A)(1) In the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop the operator's motor vehicle at the scene of the accident or collision. The operator shall remain at the scene of the accident or collision until the

operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to all of the following:

(a)  Any person injured in the accident or collision;

(b)  The operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision;

(c)  The police officer at the scene of the accident or collision.

(2)  In the event an injured person is unable to comprehend and record the information required to be given under division (A)(1) of this section, the other operator involved in the accident or collision shall notify the nearest police authority concerning the location of the accident or collision, and the operator's name, address, and the registered number of the motor vehicle the operator was operating. The operator shall remain at the scene of the accident or collision until a police officer arrives, unless removed from the scene by an emergency vehicle operated by a political subdivision or an ambulance.

* * *

(3)  If the accident or collision results in the death of a person, failure to stop after an accident is whichever of the following is applicable:

Case No. 22 CO 0049

(a) Except as provided in division (B)(3)(b) of this section, a felony of the third degree;

(b) If the offender knew that the accident or collision resulted in the death of a person, a felony of the second degree.

**{¶34}** Here, the sole element at issue is whether Appellant knew a person had died as a result of the accident he caused. There is no direct evidence that Appellant knew he caused a death. However, if believed, there is an abundance of circumstantial evidence demonstrating this knowledge. First, Appellant could not have confused striking a child with hitting a mailbox or an unoccupied bicycle. There was evidence of record that a loud noise was produced on impact and it caused the child to be launched about seven to eight feet into air and sixty feet forward. Although it was 9:00 p.m. during the fall season, the driver of a vehicle causing this kind of impact would certainly have noticed the child's body flying through the air, not to mention that the impact caused by hitting a person is vastly different from the impact that would be caused had he hit an unoccupied bicycle or even a mailbox.

**{¶35}** Second, there is evidence that Appellant crossed the white fog line and swerved around M.T. and then hit A.H. in attempting to return to the road. The record reveals he had knowledge that bicyclists were on the road, and that the impact was caused by striking another bicyclist.

**{¶36}** Third, not only did Appellant fail to stop his vehicle or even attempt to brake, there is evidence that he actually increased his speed in an attempt to flee and avoid

Case No. 22 CO 0049

identification. If Appellant had hit a mailbox or an unoccupied bicycle as he alleged, there would have been no reason to speed away.

**{¶37}** Fourth, the crime scene was described as "a primarily straight roadway. There is a curve south of the scene. It's fairly far back. Straight, level. No poles, trees, mailboxes, driveways, nothing like that along the roadway. It's just open road with field." (Trial Tr., p. 369.) This testimony shows Appellant would have had an unobstructed view of the damage he caused. It also shows that his contention that he struck a mailbox was not credible, because the officer testified that there were no mailboxes or other objects lining this portion of the roadway.

**{¶38}** Fifth, his wife admitted that they returned to the scene to watch the investigation. There was no reason for this if Appellant did not understand that the object he struck was a human being. And certainly, once struck by a vehicle of the size and weight of Appellant's truck, the human had no chance of surviving.

**{¶39}** Sixth, Appellant lied several times to investigators and initially asked his wife to lie for him, as well. He first told investigators that someone stole his truck, then pivoted to a claim that he thought he hit a mailbox. He then stated his belief he had hit only the unoccupied bike after an initial collision was caused by another truck. As noted by the state, if he did not believe that he hit and killed a human being, it would have been unnecessary to resort to multiple lies. He instructed his wife to lie before he even learned that investigators had linked his truck with the accident, and she admitted as much to law enforcement. Based on all of the above, there was sufficient evidence that, if believed, proved Appellant knew his collision had caused the death of a person.

**{¶40}** Regarding aggravated vehicular homicide, in relevant part R.C. 2903.06(A) provides that:

(A)  No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

(1)(a)  As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;

(b)  As the proximate result of committing a violation of division (A) of section 1547.11 of the Revised Code or of a substantially equivalent municipal ordinance;

(c)  As the proximate result of committing a violation of division (A)(3) of section 4561.15 of the Revised Code or of a substantially equivalent municipal ordinance.

(2)  In one of the following ways:

(a)  Recklessly[.]

**{¶41}** Appellant apparently contests whether sufficient evidence was presented to show that he acted recklessly, leading to his argument that the court should have instructed the jury on a lesser included offense.  The state presented evidence that

Appellant swerved from his lane of traffic and almost hit M.T. before attempting to return to the road. When he hit A.H., he was approximately three inches over the fog line. He offered no evidence that this swerve was the result of mere negligence, and the state presented an abundance of evidence, as previously discussed, that his actions were reckless.

**{¶42}** We note Appellant argued at trial that the jury should have been instructed on negligent operation instead of reckless operation. On appeal, he instead argues that the jury should have been instructed on R.C. 4511.25, traveling outside the lane of traffic, a minor misdemeanor. However, he has not preserved this argument for appeal. Appellant's second assignment of error is without merit and is overruled.

### Sentencing

**{¶43}** While we affirm Appellant's conviction in full, we must *sua sponte*, raise an issue stemming from the trial court's statement at the sentencing hearing and within its judgment entry that the court elected to proceed with sentencing on count one following merger of counts one and two. However, the state is required to elect on which count the offender is to be sentenced, not the trial court. Thus, this matter is remanded on a limited basis solely to allow the state to elect on which count to proceed with sentencing. The remainder of Appellant's sentence is affirmed and may not be addressed at the limited hearing on remand.

### Conclusion

**{¶44}** Appellant argues that his possession of cocaine charge should have been severed from his other offenses for trial purposes, as they were unrelated. He also argues that his convictions were not supported by sufficient evidence and that the trial court erred

by failing to instruct the jury on a lesser-included charge. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed. However, the matter is remanded on a limited basis solely to allow the state to elect on which count to proceed to sentencing for the merged convictions.

D'Apolito, P.J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  However, we hereby remand this matter on a limited basis to allow the state to elect which count to proceed with sentencing.  Because the remainder of Appellant's sentence is affirmed, it may not be addressed at the limited remand hearing.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**